# BOONE COUNTY *v.* BURLINGTON AND MISSOURI RIVER RAILROAD COMPANY.

### APPEAL FROM THE CIRCUIT COURT OF THE UNITED STATES FOR THE DISTRICT OF NEBRASKA.

No. 297. Argued April 9, 1891. — Decided April 20, 1891.

The statute of limitations of Nebraska, of four years, as to an action for relief on the ground of fraud, and the doctrine of laches, apply to a suit by a county in Nebraska, brought in the Circuit Court of the United

States for the District of Nebraska, to set aside a decree of the same court for fraud.

Facts stated which supported the defences of the statute of limitations and of laches.

THE case is stated in the opinion.

*Mr. J. C. Cowin* for appellant.

*Mr. T. M. Marquett* for appellees.

MR. JUSTICE BLATCHFORD delivered the opinion of the court.

This is a bill in equity, filed on the 9th of June, 1883, in the Circuit Court of the United States for the District of Nebraska, by the county of Boone, a municipal corporation of the State of Nebraska, against the Burlington and Missouri River Railroad Company in Nebraska, a Nebraska corporation, and Horatio H. Hunnewell, a citizen of Massachusetts.

The bill avers that during the years from 1873 to 1877, both inclusive, the railroad company owned certain lands, of which a schedule is annexed to the bill; that for those years taxes were assessed upon those lands, by the proper authorities of Boone County, amounting in all to $68,666, which, with legal interest, costs and penalties, amount now to more than $90,000; that on the 4th of March, 1878, said Hunnewell filed a bill in the Circuit Court of the United States for the District of Nebraska, against the railroad company, and the board of county commissioners of Boone County, and one Pollman, treasurer of the county, to compel the cancellation of said taxes and procure a decree declaring them to be illegal and void; that on the same day, without the issue of process, the then board of county commissioners of Boone County, by M. H. Sessions, a solicitor of the court, pretended to appear and file a stipulation consenting to the taking of the bill *pro confesso,* and to the entry of a decree in favor of Hunnewell for the relief prayed, granting a perpetual injunction against the collection of any of the taxes, declaring the same to be illegal and void, and relieving the lands from the lien thereof, which decree was entered on the 8th of March, 1878. A copy of the bill filed by Hunnewell is annexed. It set forth that the

plaintiff and all the stockholders of the company, who numbered over one thousand, were citizens of the United States other than Nebraska, and that the defendants were citizens of Nebraska. Its prayer was for a decree that the taxes were illegal and void, for an injunction restraining the treasurer from enforcing them and from selling any of the land, and restraining the company from paying the taxes, for a decree ordering the treasurer and the board to cancel the taxes and the record thereof on the books of the county, and for general relief. The gravamen of the Hunnewell bill was that the taxes were all of them illegal and void, for reasons set forth in the bill, and that the plaintiff was, and had been for more than four years, the owner and holder of 2316 shares of the stock of the company, and had requested its board of directors to take efficient measures to protect it from said illegal taxes, which request the board of directors refused, and the company was about to pay the taxes.

The decree of March 8, 1878, was as follows: "And now comes as well the said plaintiff, by his attorney, as the said defendants, by their attorneys, and thereupon this action comes on for trial before the court upon the issues joined between the parties; on consideration whereof, the court doth find the issue in favor of the plaintiff, and doth find that the taxes set forth in said petition of plaintiff are void, as in said petition the said plaintiff has alleged. It is therefore ordered and adjudged that an injunction be, and the same is hereby, allowed as prayed for in said petition of plaintiff, and the same is hereby made perpetual; and that the said defendants, the county commissioners and the treasurer of said county, or their successors, are hereby perpetually enjoined from collecting, or in any way attempting to collect, or in any way intermeddling with, the taxes set forth in said petition, and that the successors in office of the said defendants be, and the same are hereby, perpetually enjoined from collecting or in any way intermeddling with said taxes; and it is further considered that the said plaintiff recover against the said defendants his costs in and about this suit in this behalf expended, taxed to be — dollars."

The bill filed June 9, 1883, further sets forth that the taxes were legal and valid, and had not any of them been paid, and were subsisting liens upon the lands. It further avers, that in January, 1878, the then county commissioners of Boone County and the county clerk thereof went from that county to the city of Lincoln, in Lancaster County, Nebraska, at the special instance and request of the railroad company ; that at Lincoln, on January 30, 1878, the then county commissioners, pretending to act as the board of commissioners for Boone County, met with certain agents, attorneys and officers of the railroad company and with one Adam Smith, of Chicago, and those parties, confederating for the purpose of defrauding the county, undertook, fraudulently and without any authority of law, to enter into a stipulation or agreement, which the commissioners signed and delivered to the company. It is dated at Lincoln, January 30, 1878, and is signed by Thomas T. Wilkinson, chairman of the board of commissioners, by the other two commissioners, Edwin Broadbent and T. H. Bowman, and by M. H. Sessions as attorney for Boone County, and reads as follows : " Memorandum of an agreement made by and between the Burlington and Missouri River Railroad Company in Nebraska, first party, and the County of Boone, Nebraska, by its commissioners, of the second part, and the Nebraska Land and Live Stock Company, of the third part. Whereas parties of the first and third parts have this day entered into an agreement and bonds for the performance of certain obligations conditional on the absolute release by the second party of all illegal taxes levied upon the lands of the first and third parties in the county of Boone for the years 1873 and 1877, inclusive : Now, therefore, the party of the second part hereby agrees, by its commissioners and by its authorized attorney, M. H. Sessions, to enter into the necessary stipulation and to have decree of court entered up in the Circuit Court of the United States for the District of Nebraska, eradicating the whole of the taxes now charged against the lands of the first and third parties for the above years, all of said taxes having been examined and agreed upon as being illegal and void."

The bill avers that there was no consideration for the agreement; that the commissioners acted as individuals and not as a board; that their action had no binding or valid effect; and that the pretended consideration for the agreement was the executing at the same time of two documents, for whose execution there was no warrant in law, and the commissioners had no authority to become parties thereto. One of these documents was dated January 30, 1878, and recited a contract made July 17, 1877, between the county of Boone, through its commissioners, and Adam Smith, wherein Smith agreed to purchase certain lands of the railroad company and pay all legal taxes thereon for the year 1878 and thereafter, and to make certain improvements in the county, in consideration of which the commissioners agreed, at some future day, to take the necessary legal steps for the wiping out of all the illegal taxes claimed to be due upon the lands of the company for the years from 1873 to 1877, both inclusive. It further recited that Smith was prepared to enter into the necessary obligations for the payment promptly thereafter of the legal taxes; that the commissioners had that day taken the necessary legal action to wipe out all the illegal taxes claimed to be due for those five years; and that Smith had transferred his rights to the Nebraska Land and Live Stock Company, which had assumed all his duties and obligations. By that document, the latter company bound itself to pay all legal taxes for the years 1878 to 1882 inclusive, which might be levied upon the lands purchased by it from the railroad company in Boone County, and bound itself also to pay all taxes which might be levied upon the lands of the railroad company in Nebraska for the years 1878 to 1882 inclusive, if the railroad company failed to pay them. By the other document, the railroad company bound itself to pay all legal taxes for the years 1878 to 1882 inclusive, upon all its lands in Boone County which had not been absolutely sold and deeded to the Nebraska Land and Live Stock Company, or to other parties.

The bill further avers, that at the same time and place, the commissioners, pretending to act for the county and as officers thereof, and intending to defraud the county out of said taxes,

signed a writing purporting to be an employment of Sessions as attorney for the county.    Such writing was dated January 30, 1878, and signed by Wilkinson, as chairman of the board, and by Broadbent and Bowman, the other two commissioners, and read as follows : " That whereas the taxes on the lands of the B. & M. R. R. Co. in Nebraska, in Boone County, both State and county and school taxes, are unpaid for the years 1873, 1874, 1875, 1876 and 1877 ; and whereas the said company dispute the legality of said taxes, and it is necessary to test their legality : Therefore, be it resolved, that the board employ M. H. Sessions as its attorney, to defend any suit that may be brought against the county, or to bring any suit he may deem best, to test the legality of said taxes, and if he deem that any of said taxes are illegal he may make such compromise in the matter with the said company as he may deem best for the interest of the county in the premises; and the said M. H. Sessions is hereby authorized to enter an appearance for the county of Boone, Nebraska, in any suit which may be brought by the said Burlington and Missouri River Railroad in Nebraska, or by any stockholder thereof, and to take action as directed by said commissioners, and to waive issuance and service of a subpoena in the case."

The bill avers, that, in signing such writing, the commissioners acted as individuals and not as officers of the county; that they had no authority to execute the writing or to confer upon Sessions the power pretended to be conferred upon him ; that, to induce the commissioners to enter into such an arrangement, the railroad company and Smith agreed to pay and did pay all the expenses of the commissioners in going from Boone County to Lincoln and returning, and all their expenses at Lincoln; that the railroad company and Smith fraudulently induced the commissioners to pretend to employ Sessions as attorney for the county, on an agreement that the company and Smith would pay for his services; that Sessions was so employed by the railroad company and Smith as an attorney to act in their interest and against the interest of the county, while pretending to act as the attorney of the county; that his fees and expenses for so doing were agreed by the company

and Smith to be paid by them; that in all he did, pretending to act as attorney and counsel for the county, he had acted for the company and its interests, in pursuance of such arrangement; that Hunnewell was a party to such fraudulent arrangements, and in pursuance thereof the suit was commenced in a collusive and fraudulent manner; that Sessions brought the bill to Omaha with the stipulation and a decree all prepared for entry, and filed the same, paying the fees therefor on behalf of the railroad company and Hunnewell; that the decree was null and void; and that the railroad company was the real plaintiff, and, fraudulently conspiring with the then board of county commissioners and with Sessions, caused the bill to be brought in the name of Hunnewell, for the sole purpose of obtaining jurisdiction for the bill in the court in which it was filed, all the other parties thereto being citizens of Nebraska.

The bill waives an answer on oath, and prays that the decree of March 8, 1878, be set aside as fraudulent and void, and that the taxes be declared valid and subsisting liens on the real estate, and for general relief.

The railroad company and Hunnewell put in an answer to the bill, taking issue on its material allegations. The answer also set up that, after the entry of the decree of March 8, 1878, the railroad company and the Nebraska Land and Live Stock Company expended large sums of money in getting persons to settle upon the lands, and commenced at once to sell them, the purchasers buying on the faith that the taxes were perpetually enjoined and not a lien upon any of the lands; that, since the decree was entered, and prior to the commencement of this suit, the railroad company, without any knowledge that Boone County intended to litigate or reopen the decree, had sold all of the lands, largely to actual settlers, who had moved in and taken possession of them, and had made valuable improvements on them, relying on the fact that the taxes were not a lien upon the lands; that the railroad company now owned none of the lands, but all of them had been deeded to other parties; that Adam Smith died some two years ago; that since the decree the railroad company has deeded 60,000 acres

of the land to the Nebraska Land and Live Stock Company, and the latter company had sold the greater part of the land to actual settlers, who had settled upon the same in good faith, relying upon the fact that the taxes for the years 1873 to 1877, both inclusive, were not a lien upon it, and had put on it a large amount of improvements; that, as the county of Boone had allowed them to buy the land and settle upon it, and had taken no steps for a period of over five years after the decree was entered, it ought to be estopped, and its laches had been so great that it would be inequitable to set aside the decree, which would have the effect to create a lien upon all of said land so sold to, and settled upon by, the persons who had bought in good faith and knew nothing about any effort that would be made to set aside the decree; that, in June, 1880, the railroad company sold to the Chicago, Burlington and Quincy Railroad Company 77,229 acres of the land, the latter company having no knowledge that any effort would ever be made to set aside the decree, but purchasing in good faith, believing that the taxes in question were no liens upon the land; that it would not have purchased had it known that there would be any attempt to open up the decree; that, prior to the bringing of this suit, the last-mentioned company had sold 75,000 acres of the land, largely to actual settlers, mostly in tracts of 160 acres to each, and at much expense had induced persons to buy, relying on the fact that the taxes in question had been declared null and void, a large part of the lands sold by both of the railroad companies having been sold in 1879 and 1880; that, under the circumstances Boone County ought to be estopped, and its laches had been so great that it could not now disturb the settlers who had bought in good faith; that it ought not to maintain this suit, because it had failed to bring the same within four years from the time it discovered the pretended fraud set up in the bill; that it allowed over five years to elapse after it had full knowledge of the transaction as to the entry of the decree complained of, before it took any steps to annul the same; that it was barred of any relief by the statute of limitations of Nebraska, as well as by laches in not commencing this suit until the lands had been sold to

parties who knew nothing about the circumstances under which the decree was entered; and that the board of county commissioners, and each one of them, and the officers and taxpayers of the county, had full knowledge of all the circumstances under which the decree of March 8, 1878, was entered, more than four years before this suit was brought.

There was a replication to the answer, proofs were taken, and the Circuit Court, on a hearing, dismissed the bill for want of equity, on the ground of laches on the part of the plaintiff. From that decree the plaintiff has appealed to this court.

The appellant contends (1) that the Circuit Court had no jurisdiction in the Hunnewell case; (2) that the taxes in question were valid; (3) that the proceedings to secure the decree cancelling the taxes were a fraud on the appellant and an imposition on the court; (4) that, if those proceedings were not void for fraud, they were void for want of legal authority in the board of county commissioners to stipulate that the decree be entered cancelling the taxes; and (5) that this suit is not barred by the statute of limitations or by laches.

We are of opinion that this suit was barred by the statute of limitations of the State of Nebraska and by laches, and that the bill was properly dismissed.

By section 12, of title 2, of chapter 57, of the General Statutes of Nebraska, of 1873, it is provided that an action for relief on the ground of fraud can only be commenced within four years after the cause of action shall have accrued, but the cause of action in such case shall not be deemed to have accrued until the discovery of the fraud. There is no allegation in the bill in this case that the county or its officers were, at any time after the entry of the decree of March 8, 1878, ignorant of the facts and circumstances connected with and attending its entry. The board of county commissioners consisted of three persons, of whom two were a controlling quorum. It appears from the evidence that the personnel of the board was changed on the 1st of January, 1879, more than four years and five months before this bill was filed, Wilkinson and Bowman having gone out of office by or before January

1, 1879. There is no allegation in the bill, nor is there any proof, that the board of county commissioners was under hostile control down to a period within four years of the filing of the bill; nor is there any averment in the bill as to the time when the alleged fraud was discovered. The decree was a matter of public record. It decreed that the taxes generally were void, meaning all of them, as alleged in the bill filed by Hunnewell, and it granted a perpetual injunction against the collection of all the taxes. The parties who took part in the proceedings were accessible; Smith was then alive, and Sessions, who was examined as a witness in this case, could have been inquired of. *Stearns* v. *Page*, 7 How. 819; *Moore* v. *Greene*, 19 How. 69; *Beaubien* v. *Beaubien*, 23 How. 190; *Badger* v. *Badger*, 2 Wall. 87, 95; *Case of Broderick's Will*, 21 Wall. 503, 518; *Brown* v. *County of Buena Vista*, 95 U. S. 157; *Wood* v. *Carpenter*, 101 U. S. 135; *Graham* v. *Boston, Hartford &c. Railroad*, 118 U. S. 161; *Kirby* v. *Lake Shore &c. Railroad*, 120 U. S. 130; *Société Foncière &c.* v. *Milliken*, 135 U. S. 304; *Norris* v. *Haggin*, 136 U. S. 386, 392; *Mackall* v. *Casilear*, 137 U. S. 556, 566.

The appellant seeks to apply to the county and its officers in this case the established rule that laches will not be imputed to a government for a failure on the part of its officers to perform their duty. *United States* v. *Kirkpatrick*, 9 Wheat. 720; *United States* v. *Van Zandt*, 11 Wheat. 184; *United States* v. *Nicholl*, 12 Wheat. 505; *Dox* v. *Postmaster General*, 1 Pet. 325; *Gaussen* v. *United States*, 97 U. S. 584. But this doctrine is not extended to such a municipal corporation as the county of Boone. *Metropolitan Railroad* v. *District of Columbia*, 132 U. S. 1, 11, 12. The principle of ratification by laches or delay is as applicable to such a municipal corporation as it is to a private corporation or to an individual person. 1 Dillon on Municipal Corporations, 4th ed. § 548; *Clark* v. *City of Washington*, 12 Wheat. 40; *School Directors* v. *Georges*, 50 Missouri, 194; *City of Cincinnati* v. *Evans*, 5 Ohio St. 194. The statute of limitations of Nebraska makes no exception in favor of such a municipal corporation as the county of Boone, and the doctrine of laches applies to it and to its board of county commissioners.

By the General Statutes of Nebraska, of 1873, chapter 13, section 1, the county was made a body corporate, and it was provided by section 4 that suits by or against it should be brought by or against the board of county commissioners of the county, and, by other provisions, power was conferred upon the board to levy and collect taxes. It, therefore, had authority to act for the county in respect to the collection of taxes. Indeed, that is its only authority for the bringing of the present suit, coupled with the provision found in section 93, of chapter 13, of the General Statutes of Nebraska, of 1873, that the county commissioners are authorized to employ attorneys in any case, either civil or criminal, in which their county is interested, when the cause is taken to the Supreme Court of the State, or before any United States court, and are authorized to pay a reasonable compensation for such services.

*Decree affirmed.*

MR. CHIEF JUSTICE FULLER did not sit in this case, or take any part in its decision.